UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
CIVIL DIVISION

DIRECT GENERAL INSURANCE COMPANY,

    Plaintiff,

v.

SEAN L. CREAMER and DELVIS T. EASON,

    Defendants.
_____/

CASE NO. 3:23-cv-00380

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Direct General Insurance Company ("Direct General"), through its undersigned counsel, files its complaint for declaratory judgment against Defendants Sean L. Creamer ("Creamer") and Delvis T. Eason ("Eason"), and states:

**THE PARTIES**

1. Plaintiff, Direct General, is incorporated in the State of Indiana with its principal place of business in Winston-Salem, North Carolina. Therefore, Direct General is a citizen of Indiana and North Carolina within the meaning of 28 U.S.C. § 1332(c).

2. Defendant, Creamer, is a citizen of the State of Florida who resides in Youngstown, Bay County, Florida and is currently incarcerated in the Bay County Jail. Therefore, Creamer is a not a citizen of North Carolina or Indiana.

3. Defendant, Eason, is a citizen of the State of Florida who resides in Hollister, Putnam County, Florida. Therefore, Eason is a citizen of Florida and not a citizen of North Carolina or Indiana.

4. Because Direct General is a citizen of North Carolina and Indiana and neither Creamer nor Eason are citizens of those states, there is complete and diverse citizenship of the parties.

## JURISDICTION, AND VENUE

5. This is an action for declaratory judgment and other relief under 28 U.S.C §§ 2201 and 2202.

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) based upon complete diverse citizenship of the parties and the provisions of the Federal Declaratory Judgment Act to declare the rights and obligations of the parties under an insurance policy.

7. There is complete diversity of citizenship between the parties, as Direct General is a citizen of North Carolina and Indiana, Creamer is a citizen of Florida, and Eason is a citizen of Florida.

8. The amount in controversy exceeds this Court's minimum jurisdictional amount of $75,0000, exclusive of interest, costs, and attorneys' fees. As discussed more fully below, Eason seeks to recover an amount that far exceeds the jurisdictional minimum.

9. Accordingly, under 28 U.S.C. § 1332(a)(1), this Court has jurisdiction based on the diversity of the citizenship of the parties.

10. Venue lies proper in the Central District of Florida per 28 U.S.C. §§ 1391(a) and 1391(c) because Eason is a citizen within this District and the underlying action for damages that gives rise to this dispute is pending in the Seventh Judicial Circuit in and for Putnam County, Florida, which is located within this District.

11. All conditions precedent to the filing of this action have occurred or otherwise have been excused or waived.

12. Pursuant to the requirements of 28 U.S.C. § 2201 and Article III, Section 2 of the United States Constitution, a case or controversy exists and has existed between the parties since the beginning of this action, namely regarding Direct General's claims handling of Creamer's claim in relation to the subject underlying lawsuit, such that an action for declaratory judgment is ripe and appropriate.

## **FACTUAL ALLEGATIONS**

13. On April 27, 2019, Creamer and Eason were involved in a multi-vehicle automobile accident in Putnam County, Florida (the "Accident").

14. According to Eason, Creamer negligently operated a 1997 Honda Civic such that it collided with a 2007 Toyota Camry operated by Eason and caused Eason to sustain injuries.

15. The impact of the collision caused debris to also strike a third vehicle, a 2019 Hyundai Accent driven by Tomekeia Kwanna Corning ("Corning"), in which Sherion Lewis ("Lewis") was a passenger.

16. At the time of the Accident, Creamer was a listed driver under an automobile insurance policy issued by Direct General (Policy No. FLPA-142815662) to Creamer's wife, Marth F. Scott, with effective dates of April 11, 2019 to January 31, 2020 (the "Policy") and bodily injury liability coverage with limits of $10,000 per person and $20,000 per accident. A true and correct copy of the Policy is attached as **Exhibit 1**.

17. Upon learning of the Accident, Direct General promptly and reasonably undertook a thorough investigation of the relevant facts, including—without limitation—attempting to determine the nature and extent of any injuries.

Case 3:23-cv-00380-TJC-PDB   Document 1   Filed 04/03/23   Page 5 of 13 PageID 5

Case No. 3:23-cv-00380

18. As part of Direct General's prompt investigation and good faith claims handling, it performed tasks that included, by way of example only and not by limitation, obtaining a recorded statement of the Accident from Creamer; requesting and obtaining updated address, phone, and other contact information from Creamer; requesting information regarding Eason's, Corning's, and Lewis's alleged injuries; complying with Eason's insurance disclosure request under Florida Statute § 627.4137; providing reasonable settlement offers based on the information available to Direct General; and proactively tendering its policy limits to Eason on behalf of Creamer in advance of any demand.

19. On or about May 20, 2019, prior to any demand from Eason's counsel, Direct General sent a letter to Eason's counsel tendering the $10,000 per person bodily injury limits to Eason's counsel in exchange for a full release of Eason's claims against Creamer for the Accident and enclosing a copy of the settlement check. A true and correct copy of the May 20, 2019 letter is attached as **Exhibit 2**.

20. On or about July 18, 2019, Eason's counsel returned the settlement check to Direct General and indicated that a "formal demand" would be sent shortly along with Eason's medical bills. A true and correct copy of the July 18, 2019 letter is attached as **Exhibit 3**.

5

1039442\313011580.v1

21. On or about July 26, 2019, Direct General settled Corning's bodily injury claims against Creamer for the Accident for an amount within the Policy's limits and leaving the full $10,000 per person bodily injury limits still available to settle Eason's bodily injury claim against Creamer.

22. On or about August 20, 2019, Direct General settled Lewis's bodily injury claims against Creamer for the Accident for an amount within the Policy's limits and leaving the full $10,000 per person bodily injury limits still available to settle Eason's bodily injury claim against Creamer.

23. On or about September 16, 2019, Direct General had not received any demand from Eason's counsel nor heard from Eason's counsel regarding the status of Eason's bodily injury claim against Creamer. Accordingly, Direct General reissued the settlement check for the full $10,000 per person bodily injury limits to Eason's counsel as part of its good faith effort to resolve Eason's claim. A true and correct copy of the September 16, 2019 letter is attached as **Exhibit 4.**

24. By letter dated October 8, 2019, Eason's counsel requested updated insurance disclosures from Direct General pursuant to Florida Statute § 627.4137 as well as a completed copy of an affidavit by Creamer

that there was no other bodily injury insurance coverage for the Accident (the "Affidavit"). Eason's counsel requested the Affidavit within thirty days, or by November 6, 2019.

25. By letter dated October 9, 2019, Direct General sent Creamer a copy of Eason's October 8, 2019 letter and the Affidavit. Importantly, among other things, Direct General's October 9, 2019 letter explained to Creamer that Eason's potential willingness to settle his claims against Creamer was conditioned upon the Affidavit's execution, that the deadline to return the Affidavit was November 6, 2019, and that failure to execute and return the Affidavit may negate the possibility of settlement and leave Creamer subject to personal exposure. Direct General also invited Creamer to contact them regarding any questions or if Creamer needed additional assistance in completing the Affidavit. A true and correct copy of the October 9, 2019 letter is attached as **Exhibit 5**.

26. Direct General responded to Eason's Florida Statute Section 627.4137 request via letter dated October 10, 2019, which also stated that Direct General was not aware of additional bodily injury insurance coverage for Creamer for the Accident. A true and correct copy of the October 10, 2019 letter is attached as **Exhibit 6**.

27. By letter dated October 11, 2019, Direct General followed up with Creamer regarding the execution of the Affidavit, reiterating its importance and advising Creamer of the potential consequences for the failure to return the Affidavit and the potential for personal exposure. Direct General also enclosed a self-addressed stamped envelope to make return of the Affidavit as easy as possible. A true and correct copy of the October 11, 2019 letter is attached as **Exhibit 7.**

28. Because Direct General did not receive a response to its October 10, 2019 letter to Creamer or an otherwise executed copy of the Affidavit, Direct General attempted to contact Creamer by phone multiple times and left voicemails regarding the Affidavit.

29. On October 23, 2019, Direct General hired Custard Insurance Adjusters ("Custard") to investigate Creamer's whereabouts and locate Creamer to ensure that Creamer had received Direct General's letters.

30. In the meantime, Direct General communicated to Eason's counsel that it had not yet heard from Creamer and obtained an extension for Creamer to return the Affidavit until November 15, 2019.

31. On November 6, 2019, Custard located Creamer at his Youngstown, Florida address and left a copy of Eason's October 8, 2019 letter and the Affidavit at the door, as no one would answer the door.

Custard attempted to speak with Creamer via phone, but was advised via text that Creamer would not speak with them and only through his fiancé.

32. On November 11, 2019, Creamer advised Direct General that he refused to complete the Affidavit and had ripped it up. Direct General advised Creamer, once again, of its importance, and Creamer ultimately agreed to execute the Affidavit.

33. Direct General sent Creamer a new copy of the Affidavit on November 12, 2019.

34. On November 14, 2019, as Direct General had not received a the executed Affidavit from Creamer, Direct General attempted to contact Eason's counsel and advise that it had made contact with Creamer and hoped to provide an executed Affidavit to them shortly but was requesting an extension to do so. Direct General made another effort to do the same on November 15, 2019.

35. On November 15, 2019, Direct General did not receive an executed copy of the Affidavit from Creamer and had not received a confirmed extension from Eason's counsel.

36. Instead, that same day, on November 15, 2019, Eason filed the underlying tort lawsuit against Creamer in the case styled *Delvis T.*

*Eason v. Sean L. Creamer*, Case No. 2019-422-CA, in the Seventh Judicial Circuit in and for Putnam County, Florida (the "Underlying Lawsuit"). A true and correct copy of the complaint filed in the Underlying Lawsuit is attached as **Exhibit 8.**

37. Direct General promptly appointed defense counsel to represent Creamer in the Underlying Lawsuit.

38. During the litigation of the Underlying Lawsuit, Direct General learned that Creamer had been incarcerated at Bay County Jail since December of 2019, and is currently being held there for unrelated criminal charges.

39. During the litigation of the Underlying Lawsuit, Direct General eventually obtained an executed copy of the Affidavit from Creamer. A true and correct copy of the executed Affidavit is attached as **Exhibit 9**.

40. During the litigation of the Underlying Lawsuit, Direct General re-offered the policy limits to Eason in settlement multiple times—on March 10, 2020 and via proposal for settlement on July 23, 2020—but both offers were rejected.

41. During the litigation of the Underlying Lawsuit, neither Eason nor his counsel ever indicated a willingness to settle Eason's claim against Creamer within the Policy's limits.

42. Instead, during the litigation in the Underlying Lawsuit, and on June 29, 2020, Eason demanded over $2 million for his damages.

43. At all times during the litigation of the Underlying Lawsuit, Creamer was advised of the status of settlement negotiations and the possibility that an excess judgment in the Underlying Lawsuit subject him to personal exposure.

44. On February 27, 2023, Direct General issued a reservation of rights letter to Creamer, which discussed, among other things, Creamer's adamant refusal to cooperate with Direct General's investigation and his defense in the Underlying Lawsuit. A true and correct copy of the reservation of rights letter to Creamer is attached as **Exhibit 10**.

45. The Underlying Lawsuit proceeded to a jury trial, which resulted in a verdict of $1.25 million against Creamer for the Accident.

## COUNT I – DECLARATORY RELIEF AGAINST ALL DEFENDANTS

46. Direct General incorporates paragraphs 1 through 45 above as if fully stated herein.

47. Direct General seeks a declaration that Direct General properly and fully discharged its obligations of good faith in the handling of the subject claim for benefits; additionally, Direct General seeks a declaration that it is without liability to Defendants Eason and Creamer for any amount in excess of the applicable policy limits.

48. There is a bona fide, present, and practical need for the declaration.

49. The declaration pertains to a present, ascertainable set of facts and controversy among the parties.

50. Direct General's rights and obligations in connection with the Policy are dependent upon the present, ascertainable facts and law, as well as the Court's application thereof to the Policy and such facts.

51. Defendants have a present, antagonistic interest to Direct General under the Policy and subject matters of this action.

52. The relief sought by Direct General is not merely for the purpose of obtaining an advisory opinion from the Court.

**WHEREFORE,** Direct General Insurance Company respectfully requests this Court :

1. Take jurisdiction and adjudicate the rights of the parties;

1039442\313011580.v1

Case No. 3:23-cv-00380

2. Declare that Direct General properly discharged its obligations of good faith in the evaluation of Creamer's claim;

3. Declare that Direct General is without liability to either Creamer or Eason for any amount in excess of the applicable bodily injury liability limits;

4. Declare that Eason and Creamer take nothing by this action;

5. Award costs in Direct General's favor; and

6. All further relief as this Court deems just and appropriate.

Date: April 3, 2023.

Respectfully Submitted,

HINSHAW & CULBERTSON LLP

s/ Rory Eric Jurman
Rory Eric Jurman
Florida Bar No. 194646
rjurman@hinshawlaw.com
Peter J. Lewis
Florida Bar No. 118316
plewis@hinshawlaw.com
Hinshaw & Culbertson LLP
201 E. Las Olas Boulevard
Suite 1450
Ft. Lauderdale, FL 33301
Telephone: 954-467-7900
Facsimile: 954-467-1024
*Attorneys for Direct General Insurance Company*

13