**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DIRECT GENERAL INSURANCE
COMPANY,

 Plaintiff,

v.

               Case No. 3:23-cv-380-TJC-PDB

SEAN L. CREAMER and DELVIS
T. EASON,

 Defendants.

## O R D E R

 This case is before the Court on Defendant Delvis Eason's Motion to Dismiss Complaint for Declaratory Judgment. Doc. 20. Plaintiff Direct General Insurance Company has responded in opposition. Doc. 24.

### Background[1]

 Direct General insured Defendant Sean Creamer and his wife, Martha Scott, through an automobile policy. Doc. 1 ¶ 16; Doc. 1-1. The policy included bodily injury liability coverage with limits of $10,000 per person and $20,000 per accident. Id. On April 27, 2019—while the policy was in effect—Creamer,

---

[1] For purposes of the Motion to Dismiss, the Court accepts Direct General's well-pleaded facts as true. See Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1057 (11th Cir. 2007) ("[W]hen ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true.").

Scott, Eason, and non-parties Tomekeia Corning and Sherion Lewis were involved in a multi-vehicle collision. Doc. 1 ¶¶ 13, 15; Doc. 20 at 2. Creamer, Eason, and Corning were the drivers. Doc. 1 ¶¶ 13–15. Direct General settled with Corning and Lewis, id. ¶¶ 21, 22, and attempted to settle with Eason for the $10,000 limit, id. ¶¶ 19, 20, 23–35; see also Docs. 1-2 to 1-7, 1-9, 1-10. Eason rejected the offer, and Creamer refused to complete an affidavit requested by Eason's counsel or otherwise cooperate with settlement efforts. Doc. 1 ¶¶ 20, 24, 31, 32. On November 15, 2019, Eason filed a tort suit in state court. Id. ¶ 36; Doc. 1-8. Direct General appointed counsel for Creamer, finally obtained an affidavit by him, and "re-offered the policy limits to Eason in settlement multiple times[.]" Doc. 1 ¶¶ 37, 39, 40. Eason rejected the offers and on March 29, 2023, obtained a $1.25 million verdict. Id. ¶¶ 36, 40, 45; Doc. 20 at 2; Doc. 25-1. Judgment for $1.8 million was entered on August 17, 2023.[2] Doc. 24 at 3; Doc. 25-2.

On April 4, 2023—after the verdict but before entry of judgment—Direct General filed this declaratory judgment action against Creamer and Eason. Doc. 1. Direct General asks the Court to declare that Direct General "properly discharged its obligations of good faith" and "is without liability to either

---

[2]The judgment is higher than the verdict because the judgment includes past medical expenses, which the verdict does not. Compare Doc. 25-1 (verdict), with Doc. 25-2 (judgment).

2

Creamer or Eason for any amount in excess of the applicable bodily injury liability limits," declare that Eason and Creamer "take nothing by this action," and award Direct General costs. Doc. 1 at 13.

Eason moves to dismiss for lack of jurisdiction. Doc. 20. Creamer—who has been incarcerated since December 2019—has not appeared, and the clerk entered default against him. See Doc. 1 ¶ 38; Doc. 19. The Court extended Direct General's deadline to move for default judgment to thirty days after the resolution of the claim against Eason. Doc. 26.

## Motion to Dismiss

Eason argues that the Court lacks subject matter jurisdiction because the federal Declaratory Judgment Act, 28 U.S.C. § 2201, applies only to an actual controversy, and none exists here because neither Creamer nor Eason has filed suit against Direct General. Doc. 20 at 5–7. He adds that judgment has not yet been entered in the state suit. Id. at 7. (Eason filed the motion nine days before judgment was entered. See Doc. 24 at 3; Doc. 25-2.) He further argues that Direct General is attempting to obtain an improper advisory opinion. Doc. 20 at 7–9. Alternatively, he asks the Court to exercise its discretion to dismiss the case because the case is "improper procedural fencing." Id. at 9–11.

Direct General responds that it has adequately pleaded a controversy because the facts show a substantial likelihood of injury, the state court verdict was obtained before this case was filed, Creamer's liability is established, and

3

coverage is not at issue. Doc. 24 at 7–13. Direct General denies requesting an advisory opinion and that the case is "improper procedural fencing," id. at 13–16, and argues the Court should use its discretion to hear the case, id. at 16–19. Finally, Direct General asks for leave to amend the Complaint if the original Complaint is due to be dismissed. Id. at 19–20.

## Actual Controversy

The Declaratory Judgment Act provides, "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201(a).

"A case or controversy must exist at the time the declaratory judgment action is filed." GTE Directories Publ'g Corp. v. Trimen Am. Inc., 67 F.3d 1563, 1568 (11th Cir. 1995). To "demonstrate that a case or controversy exists . . . when a plaintiff is seeking injunctive or declaratory relief," the "plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1346 (11th Cir. 1999). "Whether such a controversy exists is determined on a case-by-case basis." Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co., 68 F.3d 409, 414 (11th Cir. 1995) (quoted authority omitted). The controversy "must be real and immediate[] and create a definite[] rather than speculative threat of future injury." Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir. 1985).

"The remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments." Id. "Basically, the question . . . is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." GTE, 67 F.3d at 1567 (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)).

Because an actual case or controversy must exist, "[a] declaratory judgment procedure . . . may not be made the medium for securing an advisory opinion in a controversy which has not arisen." Coffman v. Breeze Corp., 323 U.S. 316, 324 (1945); see also Owners Ins. Co. v. Parsons, 610 F. App'x 895, 898 (11th Cir. 2015) (holding that a "hypothetical advisory opinion" is "unavailable through the declaratory judgment procedure"). Still, a declaratory judgment may be entertained "on a somewhat hypothetical set of facts," GTE, 67 F.3d at 1569. The Eleventh Circuit explained:

> It is clear that in some instances a declaratory judgment is proper even though there are future contingencies that will determine whether a controversy ever actually becomes real. The familiar type of suit in which a liability insurer seeks a declaration that it will not be liable to indemnify an insured person for any damages the injured person may recover against the insured is an example. The injured person may not sue or he may not obtain a judgment against the insured, but there is held to be sufficient controversy between the insurer and the injured person that a declaratory judgment is permissible.

Id. (quoting 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2757 (2d ed. 1983)). "That the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action." Id. (quoted authority omitted). "Rather, the practical likelihood that the contingencies will occur and that the controversy is a real one should be decisive in determining whether an actual controversy exists." Id. (internal quotation marks and quoted authority omitted).

Applying the above law to the facts here, an actual controversy exists. Direct General admits coverage of the accident and filed this action after nearly four years of attempting to resolve Eason's claims. Direct General's efforts allegedly included multiple rejected settlement offers, unsuccessfully encouraging cooperation from Creamer, and obtaining counsel for and representing Creamer in a state court suit that resulted in a jury verdict $1.24 million above the policy limit. Whether Creamer has the resources to satisfy the state court award against him is unknown but, based on the known circumstances, improbable. That Eason will file a bad faith claim based on the state court judgment is a likely contingency.[3] This case is similar to the insurance cases the Eleventh Circuit has described as involving "sufficient

---

[3]If Eason is willing to enter a binding commitment not to file a bad faith or similar type of claim, that would likely moot the case since Creamer has defaulted.

6

controversy," "proper," and "permissible." See GTE, 67 F.3d at 1569. Direct General has shown a substantial likelihood of harm and thus requests a declaration based on an actual controversy, not an advisory opinion on a remotely possible future one.[4]

## The Court's Discretion

Even when a controversy exists, the Declaratory Judgment Act "vests district courts with discretion to dismiss declaratory suits when, in their best judgment, the costs outweigh the benefits." James River Ins. Co. v. Rich Bon Corp., 34 F.4th 1054, 1059 (11th Cir. 2022). "So while federal courts normally have an 'unflagging obligation' to exercise . . . jurisdiction, where declaratory judgments are concerned this imperative 'yields to considerations of practicality and wise judicial administration.'" Id. (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 284, 288 (1995)).

"Procedural fencing" is "an umbrella term for the improper use of procedural mechanisms to avoid a merits ruling or to forum shop." Nat'l Trust Ins. Co. v. S. Heating & Cooling Inc., 12 F.4th 1278, 1287 (11th Cir. 2021). The Eleventh Circuit has described procedural fencing as using the declaratory

---

[4] To support the argument that Direct General requests an advisory opinion, Eason cites Owners Insurance Co. v. Parsons, 610 F. App'x 895 (11th Cir. 2015), and North American Capacity Insurance Co. v. C.H., No. 8:12-cv-2860-JDW-AEP, 2013 WL 5305708 (M.D. Fla. Sept. 20, 2013). Both cases are distinguishable.

7

remedy "to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable." Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1331 (11th Cir. 2005) (emphasis omitted).

Eason characterizes this action as procedural fencing, but his objection is essentially that Direct General filed this action before getting sued first. See Doc. 20 at 9–11. He does not argue that declaratory judgment would result in avoidance of a merits ruling, that a state court case against Direct General would be unremovable, or that Direct General filed the action to compete with an already filed state court case in a race for res judicata. See generally id. In short, Eason fails to show any improper conduct by Direct General. Requesting a declaration of rights where Direct General has a reasonable apprehension of being sued for bad faith is a valid exercise of the Declaratory Judgment Act.

Accordingly, it is hereby

**ORDERED:**

1. Defendant Delvis Eason's Motion to Dismiss Complaint for Declaratory Judgment, Doc. 20, is **DENIED**. However, in an abundance of caution, the Court will allow Direct General (as it requested) to file an amended complaint alleging that the judgment has now been entered in the underlying state court action and explicitly referencing a potential bad faith claim. The amended complaint must be filed no later than **March 15, 2024**.

8

    2.    Eason must file an answer to the amended complaint no later than **March 29, 2024**.

**DONE AND ORDERED** in Jacksonville, Florida, the 21st day of February, 2024.



TIMOTHY J. CORRIGAN
United States District Judge

vng

Copies to:

Counsel of record

9