# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

DIRECT GENERAL INSURANCE
COMPANY,

    Plaintiff,

v.

Case No. 3:23-cv-380-TJC-PDB

SEAN L. CREAMER and DELVIS
T. EASON,

    Defendants.

## **O R D E R**

This is an insurance bad faith case under Florida law. The dispositive question is whether the "safe harbor" provision of the Florida bad faith statute, FLA. STAT. § 624.155(4)(a), protects Plaintiff Direct General Insurance Company ("DGIC") from liability.

### I. BACKGROUND

The following facts are undisputed unless otherwise noted. On April 27, 2019, Sean Creamer and Delvis Eason were involved in an automobile accident in which Creamer collided with Eason's car, causing Eason and Creamer to sustain injuries. (Doc. 90 ¶ 2–3). Creamer was a listed driver under a car insurance policy issued by DGIC to Creamer's wife, with effective dates of April

11, 2019, to January 31, 2020, and with bodily injury liability coverage of $10,000.00 per person and $20,000.00 per accident. (Id. ¶ 1).

On the night of the accident, Eason's fiancée, Denashia Bessent, contacted Steven A. Bagen & Associates ("Bagen Law") to represent Eason. (Id. ¶ 4). On April 28, 2019, Bessent reported the accident to DGIC and stated that Eason sustained injuries, but did not provide DGIC a copy of the police report, medical records, or bills in support of Eason's injuries. (Id. ¶ 5).[1] DGIC's claims adjuster, Kathleen Felinski, began an investigation, including ordering the police report, and attempting to locate Creamer to verify the facts underlying the accident and obtain his recorded statement. (Id. ¶ 6).

On April 30, 2019, DGIC received a letter from Bagen Law requesting insurance disclosure, to which DGIC responded on May 7, 2019, with an affidavit stating DGIC was not aware of any excess or umbrella policies that might apply to the accident and DGIC itself had not issued such a policy. (Id. ¶¶ 8, 11). Also on April 30, DGIC sent Creamer a letter stating the limits of the policy, that the claims against Creamer could result in an excess judgment for which Creamer would be responsible, that he should immediately disclose the existence of any excess or umbrella coverage, that Creamer had the right to

---

[1] Eason maintains that Bessent did not have access to and therefore could not have provided DGIC with the police report, medical records, or bills the day after the accident. (Doc. 103 ¶ 5).

2

contribute to any settlement, and that he had the right to obtain separate counsel at his own expense. (Id. ¶ 9).[2] On May 10, 2019, DGIC reached Creamer via phone at Shands Memorial Hospital and obtained his recorded statement. (Id. ¶ 12).

On May 20, 2019, twenty-three days after the accident, DGIC received the police report and tendered the policy's full $10,000.00 per person bodily injury limits to Eason. (Id. ¶ 13). Also on May 20, DGIC sent Creamer a letter stating the policy limits had been tendered and DGIC was working to resolve the claims against him. (Docs. 90 ¶ 14; 103 ¶ 14). Creamer was still hospitalized and the letter was returned to sender. (Id.). DGIC also notified Creamer's personal counsel that it was working to resolve the claims against him within policy limits. (Doc. 90 ¶ 15).

On July 18, 2019, Bagen Law returned the tendered check to DGIC by letter, advising that Eason was "currently approaching maximum medical improvement" and Bagen Law would submit a formal demand. (Id. ¶ 16). After additional back and forth, on September 16, 2019, DGIC reissued the policy limits check, stating "[d]ue to our inability to speak to you, we are reissuing the check in the amount of $10,000 in a good faith effort to resolve your client's

---

[2] Eason argues DGIC generated this letter, but it was sent to the listed address on the policy, despite DGIC knowing Creamer was in the hospital. (Doc. 103 ¶ 9). Eason also notes that the letter was never forwarded or delivered to Creamer in the hospital. (Id.).

3

pending claim." (Id. ¶ 18). On October 8, 2019, Bagen Law advised Eason was considering accepting the policy limits, but stated that Eason's acceptance of the check would be conditioned upon receipt of a financial affidavit to be completed by Creamer. (Docs. 90 ¶ 20; 103 ¶¶ 20–21). Two days later, DGIC responded with the same disclosure it had previously shared, noting the lack of excess or umbrella coverage for Creamer. (Doc. 90 ¶ 22).

On November 11, 2019, after a number of unsuccessful efforts, DGIC was able to reach Creamer and mailed him a new copy of the financial affidavit to be completed. (Docs. 90 ¶ 33; 103 ¶ 33). By November 14, 2019, DGIC had not received the completed affidavit from Creamer, and called Bagen Law to request another extension for return of the affidavit, but this request was denied. (Doc. 90 ¶ 36). On November 15, 2019, Eason filed a lawsuit in state court against Creamer for injuries Eason sustained in the accident, styled Delvis T. Eason v. Sean L. Creamer, Case No. 2019-422-CA (Fla. 7th Cir. Ct. Nov. 15, 2019) (the "Underlying Lawsuit"). (Doc. 34 at 96).

On December 11, 2019, DGIC adjuster Martin Miller sent Creamer a letter advising, inter alia, that DGIC offered the policy limits to Eason, that Eason had not accepted the policy limits pending Creamer's return of the financial affidavit, and that there was a possibility of an excess judgment for which Creamer would be personally responsible. (Doc. 90 ¶ 38). On March 10, 2020, Miller emailed Bagen Law to discuss settlement of the Underlying

4

Lawsuit for policy limits, noting difficulties DGIC faced with Creamer's lack of cooperation, and offering to reissue a check for the policy amount. (Id. ¶ 39). Bagen Law replied, arguing DGIC had not undertaken additional efforts to obtain signed the affidavit from Creamer, and requested that DGIC make a "meaningful offer" to resolve the matter. (Id. ¶ 40). Miller interpreted "meaningful offer" to be a request for more than the policy limits, and concluded there was no opportunity to settle for the policy limits. (Id. ¶ 41).[3]

The Underlying Lawsuit proceeded to trial, and on March 29, 2023, a jury returned an excess verdict in favor of Eason for $1,250,000.00. (Doc. 90 ¶ 43). On August 17, 2023, final judgment was entered for $1,809,567.48. (Id.). That same day, Eason filed a motion to add DGIC as a party to the final judgment and to collect the entire excess judgment, plus attorneys' fees and costs, from DGIC. (Id. ¶ 44).

On April 3, 2023, DGIC filed its complaint for declaratory judgment in this Court, seeking a declaration that DGIC properly and fully discharged its obligations of good faith in the handling of the claim at issue, and a declaration

---

[3] Eason disputes that there was no opportunity to settle for policy limits, pointing to the October 8, 2019 letter from Eason providing DGIC with an opportunity to settle for policy limits, conditioned upon receipt of Creamer's financial affidavit by November 15, 2019. (Doc. 103 ¶ 41). Eason also notes that on March 10 and 25, 2020, Bagen Law advised Miller that Eason might be willing to accept the policy limits, but needed additional information about why the affidavit was not completed. (Id.).

that it is without liability to Eason and Creamer for any amount above the policy limits. (Docs. 1, 34). Eason answered and Creamer defaulted. (Docs. 19, 35). After discovery, DGIC moved for summary judgment. (Doc. 90). Eason responded (Doc. 103), DGIC replied (Doc. 114), and Eason sur-replied (Doc. 118).

## II.   MOTION FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." All evidence is viewed in the light most favorable to Eason, the non-moving party. See Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1098 (11th Cir. 2014) (citation omitted).

## III.   ANALYSIS

"Florida law 'imposes a fiduciary obligation on an insurer to protect its insured from a judgment that exceeds the limits of the insured's policy.'" Martinez v. GEICO Cas. Ins. Co., No. 24-10641, 2025 WL 2699231 at *5 (11th Cir. Sept. 23, 2025) (quoting Harvey v. GEICO Gen. Ins. Co., 259 So. 3d 1, 6 (Fla. 2018)). The insurer must make such decisions in good faith, because the insured "has surrendered to the insurer all control over handling of the claim, including all decisions with regard to litigation and settlement . . . ." Harvey, 259 So. 3d at 6 (quoting Boston Old Colony Ins. Co. v. Gutierrez, 386

So. 2d 783, 785 (Fla. 1980)). A third-party claimant who has received a judgment in excess of the policy limits may sue the tortfeasor's insurer directly to recover the amount, based upon alleged bad faith of the insurer in handling the matter. See Thompson v. Com. Union Ins. Co. of N.Y., 250 So. 2d 259, 264 (Fla. 1971).

The Florida Legislature amended the statute governing bad faith claims on March 24, 2023. Section 624.155(4)(a) of the Florida Statutes, as amended by House Bill ("H.B.") 837, provides:

> An action for bad faith involving a liability insurance claim, including any such action brought under the common law, shall not lie if the insurer tenders the lesser of the policy limits or the amount demanded by the claimant within 90 days after receiving actual notice of a claim which is accompanied by sufficient evidence to support the amount of the claim.

FLA. STAT. § 624.155(4)(a). The statute thus creates a safe harbor protecting insurers from bad faith lawsuits if the insurer tenders the policy limits (or the amount demanded by the claimant) within the specified ninety-day window.

This case implicates two additional provisions of H.B. 837: § 30 and § 29. Section 30 provides the baseline effective date of the amended statute: "Except as otherwise expressly provided in this act, this act shall apply to causes of action filed after March 24, 2023." Fla. H.B. 837 § 30 (2023) (emphasis added).

However, if the act affects a right under the insurance contract, § 29 provides an alternative effective date. Section 29 states:

7

> This act shall not be construed to impair any right under an insurance contract in effect on or before the effective date of this act. <u>To the extent that this act affects a right under an insurance contract, this act applies to an insurance contract issued or renewed after the effective date of this act</u>.

Id. at § 29 (emphasis added).

DGIC filed this action on April 3, 2023. (Doc. 1).[4] Based on the text of § 30 alone, because this cause of action was "filed after March 24, 2023," the safe harbor should apply. DGIC tendered the policy amount on May 20, 2019—twenty-three days after the accident, and twenty-two days after DGIC was notified about it—both well within the ninety-day safe harbor window. (Doc. 90 ¶¶ 4, 13).

Nonetheless, because the insurance policy was issued and the accident occurred before March 24, 2023, the parties disagree whether the safe harbor applies. Of concern are two related issues: (A) whether applying the baseline effective date in § 30 would result in an impermissible retroactive application of the law, and (B) whether the statute impairs rights under the insurance contract, triggering the alternative effective date set forth in § 29 (and thus precluding application of the safe harbor). Each is discussed in turn.

---

[4] In many situations, it is the injured party who files the bad faith suit. However, that this is a declaratory judgment action by the insurer seeking a determination of bad faith liability, to which Eason joined issue, does not alter the effective date.

8

### A. Prospective vs. Retroactive Application of § 624.155(4)(a)

"[T]he determinative point in time separating prospective from retroactive application of an enactment is the date the cause of action accrues, which is the date that a party has the right to sue." Agency for Health Care Admin. v. Payas, 372 So. 3d 787, 789 (Fla. 6th DCA 2023) (quotation omitted). "[A] cause of action for bad faith arises when the insured is legally obligated to pay a judgment that is in excess of his policy limits." Kelly v. Williams, 411 So. 2d 902, 904 (Fla. 5th DCA 1982) (citation omitted). Stated differently, "[a] cause of action for third-party bad faith against an insured's liability carrier is not ripe until the third party obtains a judgment against the insured for an amount that exceeds the insured's policy limits." Wright Ins. Agency, Inc. v. Nationwide Mut. Fire Ins. Co., 328 So. 3d 331, 334 (Fla. 2d DCA 2021) (citation omitted).

DGIC argues the safe harbor is available "to insurers who face bad faith claims accruing post-tort reform, or after March 24, 2023"—that is, the baseline effective date stated in § 30. (Doc. 90 at 19). DGIC argues this would not constitute a retroactive application of the law here, because the bad faith claim accrued when the excess judgment was entered on August 17, 2023. (Doc. 114 at 5–9). Eason contends, however, that allowing the safe harbor would constitute a retroactive application of the law, because § 624.155(4)(a) "did not exist" when the policy was issued and when DGIC adjusted the claim. (Doc. 103 at 12–13).

9

Courts in this district have persuasively held that allowing the safe harbor in cases such as this one is a prospective, not retroactive, application of the law, even when both the insurance policy was issued and the accident occurred before March 24, 2023. In Dial v. GEICO General Insurance Co., No. 8:23-cv-1650-VMC-TGW, 2024 WL 3470363 at *8–9 (M.D. Fla. July 19, 2024), the insurer tendered the policy limits to the claimant within ninety days of learning of the accident. The insurance policy was issued and the accident occurred before March 24, 2023, but the final excess judgment was entered on May 17, 2023. Id. at *1, *6. The court granted summary judgment to the insurer based on a detailed finding of no bad faith, but noted that even without a comprehensive bad faith analysis, the claimant could not bring a bad faith action because the safe harbor in § 624.155(4)(a) properly applied. Id. at *10 n.1.

In Oxonian v. GEICO General Insurance Co., No. 8:24-cv-1351-MSS-AAS, 2025 WL 555621 at *1 (M.D. Fla. Jan. 3, 2025), the insurer tendered the policy limits to the claimant twenty-three days after the accident—notably, the exact number of days it took DGIC to make its first tender of the policy limits here. Citing Dial, 2024 WL 3470363, the Oxonian court granted judgment on the pleadings for the insurer, holding that the insurer was protected by the safe harbor, even though the insurance policy was issued and the accident occurred before March 24, 2023. Id. at *5. Lastly, in Chambers v. Progressive Select

10

Insurance Co., No. 6:24-cv-141-JSS-DCI, 2025 WL 1665722 at *1 (M.D. Fla. June 12, 2025), the insurer tendered the bodily injury policy limits ten days after being notified of the accident. Focusing on the plain meaning of the statutory text, the court reasoned that the insurer was entitled to judgment as a matter of law because it had met the requirements for the ninety-day safe harbor. Id. at *3. Applying the statute in this manner was prospective, not retroactive, because the claimant's bad faith cause of action accrued with entry of an excess judgment on April 27, 2023, after the statute's baseline effective date. Id. at *4.

Here, a similarly straightforward application of the law to the facts controls. The effective date of the amended statute is March 24, 2023. The jury in the Underlying Lawsuit returned an excess verdict on March 29, 2023. (Doc. 90 ¶ 43). Final judgment was entered on August 17, 2023. (Id.). A few months earlier, but still after March 24, 2023, DGIC filed this action for declaratory judgment on April 3, 2023. (Doc. 1). Most importantly, however, because Eason's right to sue DGIC for bad faith accrued upon entry of judgment on August 17, 2023, which was after the statute's effective date of March 24, 2023, DGIC is afforded protection under the ninety-day safe harbor. See Payas, 372 So. 3d at 789; Kelly, 411 So. 2d at 904; see also Oxonian, 2025 WL 555621 at *4–5; Dial, 2024 WL 3470363 at *10 n.1. DGIC properly availed itself of that

11

protection by tendering the policy limits to Eason within the ninety-day safe harbor. (Doc. 90 ¶¶ 13, 18, 39).

### B. Impairment of Rights Under the Insurance Contract

Eason argues the determinative date for application of the safe harbor is the issuance or renewal of the insurance policy. (Doc. 103 at 14–15). Under Eason's theory, the safe harbor may apply only if the insured's contractual rights vested—i.e., the policy was issued or renewed—after March 24, 2023. (Id.). In support, Eason cites § 29, which provides, in relevant part: "To the extent that this act affects a right under an insurance contract, this act applies to an insurance contract issued or renewed after the effective date of this act." Fla. H.B. 837 § 29 (2023).

Eason makes several arguments as to why H.B. 837 affects a right under the insurance contract, which would invoke the alternative effective date of § 29 (and avoid the safe harbor). His primary argument is that he "stands in the shoes" of Creamer, the insured party, for purposes of a bad faith claim, and therefore enjoys similar rights as the insured. (Doc. 118 at 4–5).[5] He argues the analyses in Oxonian and Dial "miss the mark" because those cases "focus on when the *cause of action* accrued, not when the insured's contractual rights

---

[5] As an example, Eason notes that the third party in a bad faith case, like the insured, enjoys disclosure of otherwise work-product protected material. (Doc. 118 at 4–5). It does not follow, however, that the third party inherits all of the insured's rights.

12

vested—which was at the time of the issuance of the insurance policy." (Doc. 103 at 15) (emphasis in original).

However, as DGIC points out, Eason is not an insured under the policy, he is not a party to the insurance contract between Creamer and DGIC, and he is not an assignee of the policy benefits. (Docs. 90 at 19–20; 114 at 9–12). Rather, Eason is the injured party who obtained an excess judgment against Creamer. As such, Eason does not have any rights flowing from the insurance contract that are affected by H.B. 837. See Dial, 2024 WL 3470363 at *10 n.1 ("Even if Plaintiffs, as third parties, have rights under the insurance contract, the amendments to Section 624.155 did not affect any rights under the policy."); see also Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co., 945 So. 2d 1216, 1235 (Fla. 2006) ("[A] claim arising from bad faith is grounded upon the legal duty to act in good faith, and is thus separate and independent of the claim arising from the contractual obligation to perform.") (quotation omitted).

Even if Eason's "right" to sue DGIC for bad faith can be construed as a contractual right contemplated by § 29, this "right" did not arise until after the statute's baseline effective date. As the Dial court explained: "Plaintiffs' 'right' to file a bad faith action against Geico did not arise until the final judgments were entered . . . (after the effective date of the statute)." 2024 WL 3470363 at *10 n.1. Similarly, here, Eason's "right" to sue for bad faith did not exist until judgment was entered in the Underlying Lawsuit, which took place after the

13

effective date of § 624.155(4)(a). Therefore, applying the statute here would not "impair any right under [the] insurance contract," and would not trigger the alternative effective date in § 29. Fla. H.B. 837 § 29 (2023); see Oxonian, 2025 WL 555621 at *5 ("Because application of the amended Section 624.155 does not operate as an impermissible retroactive application of the statute, Plaintiffs' rights, to the extent they have any, have not been affected."); Chambers, 2025 WL 1665722 at *4 ("[T]he court does not look backwards to the terms of the contract but rather looks forward to the cause of action, which arose after the entry of final judgment and thus after the statute's effective date.").

Eason makes additional arguments as to why the Court should deny DGIC's Motion.[6] However, the safe harbor provision of § 624.155(4)(a) applies and is dispositive on the viability of a bad faith claim by Eason against DGIC.

Accordingly, it is hereby

**ORDERED:**

1. Plaintiff's Motion for Summary Judgment (Doc. 90) is **GRANTED**.

2. Plaintiff's Motion to Exclude Defendant's Expert Witness (Doc. 89) is **DENIED as moot**.

---

[6] Eason contends that applying the safe harbor would result in an interference with the parties' right to contract, and that an insurer's good faith duties convey a right under the insurance contract. (Doc. 103 at 18–21). He also argues that retroactive application of the statute would unconstitutionally violate due process under Art. I, § 9 the Florida Constitution. (Id. at 21–23). After consideration, however, the Court finds these arguments without merit.

14

3. Defendant's Motion to Exclude Plaintiff's Expert Witness (Doc. 97) is **DENIED as moot**.

4. Pursuant to the Court's Order of August 25, 2023 (Doc. 26), Plaintiff is **DIRECTED** to move for Default Judgment against Defendant Sean L. Creamer within thirty (30) days.

5. The Clerk is directed to enter judgment in favor of Plaintiff Direct General Insurance Company and against Defendant Delvis T. Eason.[7]

6. The Clerk should terminate the pending motions and deadlines. The file will remain open until Default Judgment is entered against Defendant Sean L. Creamer.

**DONE AND ORDERED** in Jacksonville, Florida the 30th day of September, 2025.



TIMOTHY J. CORRIGAN
Senior United States District Judge

hms
Copies:

Counsel of record

---

[7] Because there is "no just reason for delay," the Court directs entry of final judgment against Defendant Delvis T. Eason now, before entry of Default Judgment against Defendant Sean L. Creamer. FED. R. CIV. P. 54(b).

15