UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DIRECT GENERAL INSURANCE
COMPANY,

    Plaintiff,

v.

                                               Case No. 3:23-cv-380-TJC-PDB

SEAN L. CREAMER and DELVIS
T. EASON,

    Defendants.

## **O R D E R**

This is an insurance bad faith case under Florida law. Plaintiff Direct General Insurance Company ("DGIC") brought this action for declaratory judgment and other relief under 28 §§ U.S.C. 2201–2202. (Doc. 1). DGIC sought declarations that it "properly discharged its obligations of good faith in the evaluation of [Defendant] Creamer's claim[,]" that it "is without liability to either [Defendant] Creamer or Eason for any amount in excess of the applicable bodily injury liability limits[,]" and that "[Defendants] Eason and Creamer take nothing by this action . . . ." (Doc. 34 at 14). DGIC moved for summary judgment, arguing that the "safe harbor" provision of the Florida bad faith statute, Fla. Stat. § 624.155(4)(a), protected it from bad faith liability. (Doc. 90).

Defendant Delvis Eason responded (Doc. 103), DGIC replied (Doc. 114), and Eason sur-replied (Doc. 118).

On September 30, 2025, the Court granted DGIC's motion for summary judgment, finding that the safe harbor provision properly applied, barring a bad faith action by the Defendants against DGIC. (Doc. 121). Since then, the parties have filed three additional motions. First, Eason filed a Motion for Reconsideration of the Court's Order granting summary judgment (Doc. 129), to which DGIC responded. (Doc. 133). Second, DGIC filed a Motion for Default Judgment Against Defendant Sean Creamer (Doc. 125), to which Eason responded (Doc. 128), and DGIC replied. (Doc. 135). Third, DGIC filed a Motion to Tax Costs (Doc. 127), to which Eason responded (Doc. 131), and DGIC replied. (Doc. 136). Each motion is discussed below.

## I. EASON'S MOTION FOR RECONSIDERATION

"Reconsideration is an extraordinary remedy which will only be granted upon a showing of one of the following: (1) an intervening change in law, (2) the discovery of new evidence which was not available at the time the Court rendered its decision, or (3) the need to correct clear error or manifest injustice." De Ford v. Koutoulas, No. 6:22-cv-652-PGB-DCI, 2023 WL 3584077, at *3 (M.D. Fla. May 22, 2023). Eason has shown none of these circumstances. The Court will not reanalyze the applicability of the safe harbor provision, but will briefly address a few of Eason's arguments.

First, Eason argues that a decision issued by Florida's Fifth District Court of Appeal, Blumberg v. Security First Ins. Co., 420 So.3d 1070 (Fla. 5th DCA Aug. 28, 2025), justifies reconsideration of the Court's Order granting summary judgment. Blumberg is not an "intervening change in controlling law." Rather, Blumberg discusses an entirely different statute—Fla. Stat. § 627.428, which allowed awards of attorneys' fees and costs in insurance lawsuits under different circumstances.

Second, Eason asks the Court to stay the effects of its Order pending the outcome of Chambers v. Progressive Select Insurance Co., No. 6:24-cv-141-JSS-DCI, 2025 WL 1665722 (M.D. Fla. June 12, 2025), appeal docketed, No. 25-12392 (11th Cir. July 15, 2025). However, a pending appeal in another case is not "a strongly convincing reason[]" for the Court to change its prior decision. See De Ford, 2023 WL 3584077, at *3–4 (quotation omitted). The Chambers pending appeal is not a valid basis for reconsideration because it is not a change in controlling law, does not present new evidence, and does not cause manifest injustice.

Third, Eason argues that the Court should grant reconsideration for various reasons "to prevent manifest injustice." (Doc. 129 at 6 et seq.). However, Eason fails to raise any new arguments explaining how manifest injustice would result from this Court's Order. See Sims v. BMW of N. Am. LLC, No. 6:22-cv-1685-PGB-UAM, (M.D. Fla. Mar. 18, 2025) (Doc. 288 at 3) ("A motion

3

for reconsideration is not a second bite at the apple nor a vehicle for voicing disagreement with the Court's ruling."). Consequently, Eason's Motion for Reconsideration (Doc. 129) is due to be denied.

## II. DGIC'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT SEAN L. CREAMER

On July 17, 2023, the Clerk entered a default against Defendant Sean L. Creamer following DGIC's Motion for Entry of Clerk's Default Against Creamer (Docs. 18, 19). About a month later, the Court granted DGIC's request to extend the deadline to move for default judgment against Creamer until thirty days after resolution of the claims against Eason. (Doc. 26). On October 10, 2025, DGIC timely filed a Motion for Default Judgment against Creamer (Doc. 125), pursuant to Federal Rule of Civil Procedure 55(b)(2) and Middle District of Florida Local Rule 1.10(c). DGIC listed service for Creamer as Bay County Jail. (Doc. 125 at 4). Eason responded (Doc. 128), and DGIC replied (Doc. 135).

Eason argues that it would be inappropriate to enter final judgment against Creamer now because "service of the instant Motion . . . is defective[.]" (Doc. 128 at 3). Specifically, Eason points out that Creamer is no longer an inmate at Bay County Jail—he was transferred to R.M.C. Main Unit in Lake Butler, Florida, so the service of DGIC's instant Motion for Default Judgment is "defective." (Doc. 128 at 2–3).[1] DGIC replies that it properly served Creamer

---

[1] Eason also argues that it is "unclear" whether Creamer received notice

4

with both motions and has, "out of an abundance of caution and in good faith," served the Motion for Default on Creamer at the R.M.C. Main Unit. (Docs. 135 at 9; 135-2 at 2). The Court is unpersuaded that service of process was defective, because Creamer was served at his previous and current prison addresses.

Eason also argues that a default judgment against Creamer would create inconsistent judgments, because "Creamer's rights would be affected by an application of a statutory amendment effective after the policy was issued." (Doc. 128 at 5–6). DGIC replies that entry of default judgment against Creamer will not create inconsistent judgments because the Court's Order granting summary judgment equally applies to and binds both defendants. (Doc. 135).

Contrary to Eason's contention, this Court did not find that Creamer's rights would be affected if the safe harbor provision were applied to him; it only found that Eason did not have rights under the contract, and therefore, § 29 was inapplicable to avoid the safe harbor. (Doc. 121 at 13). And as DGIC notes, it is unlikely that Creamer would succeed in invoking § 29 to avoid the safe harbor's application to him. (Doc. 135 at 7) ("[B]ad faith claims are extracontractual—while they remotely relate to the existence of an insurance contract[, they] have nothing to do with the contractual benefits available

---

or service of DGIC's prior Motion for Clerk's Default. (Doc. 128 at 3). The Court is unpersuaded by this argument; DGIC has not received a return to sender or other correspondence suggesting Creamer did not receive it. (Doc. 135 at 8).

5

thereunder because they inherently seek damages above and beyond those contracted for based on conduct causing excess damages."). In any event, Creamer has failed to appear in this action and make such arguments, despite adequate service of process by DGIC. The Court is thus unpersuaded that there is a risk of inconsistent judgments or that entering default judgment against Creamer would otherwise be inappropriate.

For these reasons, DGIC's Motion for Default Judgment Against Defendant Sean L. Creamer (Doc. 125) is due to be granted.

### III. DGIC'S MOTION FOR TAXATION OF COSTS

DGIC seeks to recover certain costs as the prevailing party in this case. Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." The decision to award costs is within the Court's discretion. Marx v. Gen. Rev. Corp., 568 U.S. 371, 377 (2013). Allowable costs are those enumerated in 28 U.S.C. § 1920. See Maris Distrib. Co. v. Anheuser-Busch, Inc., 302 F.3d 1207, 1225 (11th Cir. 2002).

DGIC seeks $15,983.20 in costs, delineated as follows: $402.00 for fees of the Clerk, $1,135.00 for service of summons and subpoena, $13,947.05 in fees for printed or electronically recorded transcripts necessarily obtained for use in the case (i.e., deposition costs), $160.00 in witness fees, and $339.15 in fees for

6

exemplification and the costs of making materials (i.e., printing/copying), in addition to post-judgment interest. (Doc. 126). In support of these costs, DGIC submitted a Bill of Costs, receipts and invoices, and itemized lists (Id.).

Eason opposes the award of these costs, arguing first that DGIC's Motion to Tax Costs is premature and should be stayed until the motion for reconsideration and any related appeal is resolved. (Doc. 131 at 1). The Court finds this argument unavailing. In Section I of this opinion, the Court found that Eason's Motion for Reconsideration (Doc. 129) is due to be denied. Additionally, Eason is correct that once he files a notice of appeal, this Court will be divested of its control over those aspects of the case involved in the appeal. See Green Leaf Nursery v. E.I. DuPont De Nemours and Co., 341 F.3d 1292, 1309 (11th Cir. 2003) (citation omitted). However, Eason has not yet filed a notice of appeal, therefore this Court retains jurisdiction to tax costs.

Eason argues alternatively that if the Court awards costs, certain items should be reduced because they were not necessary to prevail or are non-taxable costs under 28 U.S.C. § 1920. (Doc. 131 at 5 et seq.). Specifically, Eason contends that DGIC's deposition costs and printing/copying costs should be reduced. Eason lastly argues that this Court should further reduce the award of costs to avoid inequity. (Id. at 11 et seq.). These arguments are addressed in turn.

**A. Reduction of DGIC's Deposition and Printing/Copying Costs**

7

A district court may tax costs associated with the depositions submitted by the parties in support of their summary judgment motions. See U.S. Equal Emp. Opportunity Comm'n v. W&O, Inc., 213 F.3d 600, 621 (citations omitted).

As an initial matter, Eason contends that the deposition costs were not necessary for the outcome, and speculates about how DGIC could have proceeded differently in litigation to avoid these costs. (Id. at 6). However, the Court will not follow Eason down this line of reasoning. What may seem excessive in hindsight could have informed DGIC's understanding of the facts and shaped its litigation strategy. As Eason admits, ". . . DGIC is permitted to prosecute its case how it wants . . . ." (Id.).

Next, Eason argues that if the Court awards costs, DGIC's request for $13,947.05 in deposition costs should be reduced to $4,522.00. (Doc. 131 at 6–10). Eason also argues that DGIC's request for $339.15 in printing/copying costs should be reduced to $14.56. (Doc. 131 at 10). For the reasons stated in Eason's response (Id. at 8–10, 11) (see "Reason for reduction" column in each table), the Court finds a reduction in these costs appropriate. Thus, these costs are reduced to deposition costs of $4,522.00 and printing/copying costs of $14.56.

### B. Reduction of DGIC's Costs to Avoid Inequity

"A non-prevailing party's financial status is a factor that a district court may, but need not, consider in its award of costs pursuant to Rule 54(d)." Chapman v. Al Transp., 229 F.3d 1012, 1039 (11th Cir. 2000). However, "[e]ven

8

in those rare circumstances where the non-prevailing party's financial circumstances are considered in determining the amount of costs to be awarded, a court may not decline to award any costs at all." Id.

Eason argues that any cost award would constitute a significant financial hardship because he is disabled as a result of the accident underlying this case and is unable to work full-time. (Doc. 131 at 11–13). He requests that this Court equitably reduce DGIC's costs to a nominal amount of $1. (Id. at 13). DGIC opposes any equitable reduction in costs, maintaining that it should be awarded the full amount. (Doc. 136 at 5). DGIC emphasizes that this Court is under no obligation to consider Eason's financial condition. (Id. at 7).

In support of his argument to equitably reduce costs, Eason cites several cases, including Robles v. GEICO Indem. Co., No. 8:19-cv-1293-TPB-AAS, 2021 WL 951248 (M.D. Fla. Mar. 12, 2021). In Robles, the district court reduced taxable costs by 50 percent based on the Report & Recommendation detailing the non-prevailing party's ability to pay and financial obligations as a caretaker. 2021 WL 951248 at *1.[2] The Court acknowledges Eason's financial circumstances due to the accident and that, as in Robles, his ability to pay is

---

[2] See also Robles v. GEICO Indem. Co., No. 8:19-cv-1293-TPB-AAS, 2021 WL 963571 at *5 (M.D. Fla. Feb. 19, 2021) (Report & Recommendation explaining why an equitable reduction in costs was appropriate).

9

limited. (Doc. 131 at 12). To this end, the Court will reduce taxable costs to $500.00.

Accordingly, it is hereby

**ORDERED:**

1. Defendant Delvis T. Eason's Motion for Reconsideration (Doc. 129) is **DENIED**.

2. Plaintiff Direct General Insurance Company's Motion for Default Judgment against Defendant Sean L. Creamer (Doc. 125) is **GRANTED**. The Clerk is directed to enter a default judgment in favor of Plaintiff Direct General Insurance Company and against Defendant Sean L. Creamer.

3. Plaintiff Direct General Insurance Company's Motion to Tax Costs (Doc. 127) is **GRANTED in part and DENIED in part**. The Clerk shall enter a costs judgment in favor of Plaintiff Direct General Insurance Company and against Defendants Delvis T. Eason and Sean L. Creamer, jointly and severally, in the amount of $500.00. Post-judgment interest will accrue at the statutory rate set forth in 28 U.S.C. § 1961.

4. The Court will enter Final Declaratory Judgment by separate writing. The file should remain open until then.

**DONE AND ORDERED** in Jacksonville, Florida the 19th day of December, 2025.



TIMOTHY J. CORRIGAN
Senior United States District Judge

hms
Copies:
Counsel of record